# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TORRENCE McCARTHY,** | : | **Civil No. 1:20-cv-2467** |
| | : | |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **THOMAS McGINLEY,** | : | |
| **Superintendent, et al.,** | : | |
| | : | |
| **Respondents.** | : | |
| | : | |

## MEMORANDUM OPINION

## I.   Introduction

Pending before the court is a petition for writ of habeas corpus filed by Torrence McCarthy. In 2006, McCarthy was convicted by a jury of first-degree murder, conspiracy to commit murder, unlawfully possessing a firearm, and four counts of recklessly endangering another person, and he was sentenced to life imprisonment. These charges arose from a drive-by shooting in Harrisburg, Pennsylvania in 2005, in which one individual was killed. McCarthy now asserts that he is entitled to a new trial because his trial counsel was ineffective in a host of ways.

1

After consideration, we find that some of McCarthy's claims are unexhausted and procedurally defaulted, and that his remaining claims are without merit. Accordingly, we will deny this petition.

## II.   <u>Statement of Facts and of the Case</u>

The factual background of the instant case was aptly summarized by the trial court in its decision denying McCarthy's petition for post-conviction relief:

> Defendant Torrence McCarthy was convicted by a jury of first-degree murder, criminal conspiracy, carrying a firearm without a license, and recklessly endangering another person. He was sentenced on August 21, 2006 to a term of life imprisonment for first-degree murder and concurrent one to two year terms on the remaining counts.
>
> At trial, a number of witnesses testified, including Derek Brice. Brice stated that on May 27, 2005, he took a bus from Philadelphia to Harrisburg and was picked up at the station by Defendant McCarthy and Jeffrey Mays, who was driving a green Kia Sportage. On the way to the apartment that Brice shared with his mother, the men observed Jared Enos. Upon seeing Enos, Defendant remarked, "There goes the pussy right there." Brice explained that there existed discord between two groups of individuals: one group consisted of Defendant and Mays, and the other group consisted of Enos and his friends. Knowing there was a "beef" between the men, Brice said, "Let's keep going." The men arrived at Brice's apartment, at which time Brice spoke to his mother, dropped off his bag, and took his mother's blue Chrysler Concord to a gas station. Defendant and Mays followed Brice to the gas station. Video tape from a surveillance camera showed the men at an Exxon gas station at 11:07 p.m., and from there they went to a Wendy's restaurant a few blocks away.
>
> After leaving Wendy's, the men drove to an apartment building where Mays and Defendant were living. Brice parked the blue Chrysler up the block from the apartment while Mays and Defendant drove around the block in the green Kia. After Mays parked, he entered the front passenger seat of Brice's car and a few minutes later, Defendant entered

the rear passenger side of the vehicle. Brice testified that when Defendant entered the vehicle, he stated, "Let's go around the block. I want to see something." Brice proceeded around the block with his headlights off until Mays tapped him on the hand and told him to "hold up." Brice brought the car to a stop near a group of people on the street, at which time Defendant fired a number of shots out the rear passenger window. Brice sped away from the scene [and] was directed to an alleyway by Defendant. Defendant got out of the car and returned a couple of minutes later. As Brice drove the men away from the area and toward his/his mother's apartment, Defendant stated, "I hope I hit one of the motherfuckers." After passing an ambulance, Brice uttered that "someone got hit back there."

Linn Mosley, Jr., who resided on Briggs Street during the time in question and also testified at trial, stated that he had heard a verbal exchange earlier in the evening in question between Mays, Defendant, and Cameron Howard. Howard was speaking to Mays, and Mosley heard Howard tell the men to "cut the beef out" and "end what is going on." Howard said that Enos wanted to talk and that one of the occupants of the vehicle's occupants replied, "Fuck that. We'll be back."

At approximately 11:30 p.m. that evening, Mosley was standing on the street near his home and Enos and two men were standing nearby. Mosley moved to his porch, as he became nervous upon hearing car doors close. Mosley observed a vehicle slowly coasting down the street with its headlights off. Fearing that something was going to transpire, Mosley yelled, "Get down." He then heard three to five gunshots fired from what he described as a blue Intrepid or Concord. He observed "fire" coming from a gun on the passenger side of the vehicle. The car then drove off, and sped through a stop sign. Once the car was gone, Mosley saw Enos on the ground. Harrisburg Police Officer Tyron Meik responded to the scene, and found Enos unresponsive. He was taken to the hospital, where he died several days later. A gunshot wound to the head was determined to be the cause of death. A handgun was recovered nearby inside of a blue glove. The DNA match was made with DNA found on the glove with a blood sample from Defendant. Defendant and Mays were apprehended in Florida.

(Doc. 9-7, at 1-3) (citations to the record omitted).

3

As the trial court noted, McCarthy was sentenced on August 21, 2006 to a term of life imprisonment for first-degree murder and concurrent one-to-two-year terms on the remaining counts. McCarthy filed a direct appeal, raising only a sufficiency of the evidence claim. His appeal was denied, and the Pennsylvania Supreme Court denied his Petition for Allowance of Appeal on September 16, 2009. Thus, McCarthy's conviction and sentence became final on December 15, 2009.

McCarthy then filed a timely petition for post-conviction relief under Pennsylvania's Post Conviction Relief Act ("PCRA") on December 15, 2010. After some considerable delay, McCarthy retained counsel to represent him, and counsel filed an amended petition raising eight issues of trial counsel's ineffectiveness. However, at the PCRA hearing, three of these issues were withdrawn. Ultimately, the PCRA court denied McCarthy's petition on June 27, 2019. The Superior Court affirmed, and the Pennsylvania Supreme Court denied review on December 16, 2020.

This petition followed. (Doc. 1). In his petition, McCarthy raises eight claims of trial counsel's ineffectiveness. Specifically, McCarthy alleges that his trial counsel was ineffective for: (1) failing to preserve a Brady[1] claim regarding surveillance tapes, and failing to correct alleged false testimony regarding the tapes; (2) failing to use the petitioner's cell phone records to impeach a government

---

[1] Brady v. Maryland, 373 U.S. 83 (1963).

witness; (3) failing to suppress a photo identification; (4) failing to suppress an in-court identification; (5) introducing evidence of the petitioner's prior bad acts; (6) failing to investigate an issue with a juror who had been excused; (7) failing to call a witness; and (8) failing to object to the use of improper impeachment evidence.

After review of the petition and the underlying state court record, we find that some of McCarthy's claims are unexhausted and procedurally defaulted, as they were withdrawn in the state courts. Moreover, the claims that have been exhausted in state court are without merit. Thus, given the deferential standard of review that applies to habeas petitions like McCarthy's, we will deny McCarthy's petition.

## III.   <u>Discussion</u>

### A. <u>State Prisoner Habeas Relief–The Legal Standard.</u>

#### (1) <u>Substantive Standards</u>

In order to obtain federal habeas corpus relief, a state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must satisfy the standards prescribed by 28 U.S.C. § 2254, which provides in part as follows:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

(A) the applicant has exhausted the remedies available in the courts of the State;

..........

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254(a) and (b).

As this statutory text implies, state prisoners must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief. At the outset, a petition must satisfy exacting substantive standards to warrant relief. Federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings led to a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. See e.g., Reed v. Farley, 512 U.S. 339, 354 (1994). Thus, claimed violations of state law, standing alone, will not entitle a petitioner to § 2254 relief, absent a showing that those violations are so great as to be of a constitutional dimension. See Priester v. Vaughan, 382 F.3d 394, 401–02 (3d Cir. 2004).

### (2) <u>Deference Owed to State Courts</u>

These same principles which inform the standard of review in habeas petitions and limit habeas relief to errors of a constitutional dimension also call upon federal courts to give an appropriate degree of deference to the factual findings and legal rulings made by the state courts in the course of state criminal proceedings. There are two critical components to this deference mandated by 28 U.S.C. § 2254.

First, with respect to legal rulings by state courts, under § 2254(d), habeas relief is not available to a petitioner for any claim that has been adjudicated on its merits in the state courts unless it can be shown that the decision was either: (1) "contrary to" or involved an unreasonable application of clearly established case law; <u>see</u> 28 U.S.C. § 2254(d)(l); or (2) was "based upon an unreasonable determination of the facts," <u>see</u> 28 U.S.C. § 2254(d)(2). Applying this deferential standard of review, federal courts frequently decline invitations by habeas petitioners to substitute their legal judgments for the considered views of the state trial and appellate courts. <u>See</u> <u>Rice v. Collins</u>, 546 U.S. 333, 338–39 (2006); <u>see also</u> <u>Warren v. Kyler</u>, 422 F.3d 132, 139–40 (3d Cir. 2006); <u>Gattis v. Snyder</u>, 278 F.3d 222, 228 (3d Cir. 2002).

In addition, § 2254(e) provides that the determination of a factual issue by a state court is presumed to be correct unless the petitioner can show by clear and convincing evidence that this factual finding was erroneous. <u>See</u> 28 U.S.C. §

2254(e)(1). This presumption in favor of the correctness of state court factual findings has been extended to a host of factual findings made in the course of criminal proceedings. See, e.g., Maggio v. Fulford, 462 U.S. 111, 117 (1983) (per curiam); Demosthenes v. Baal, 495 U.S. 731, 734–35 (1990). This principle applies to state court factual findings made both by the trial court and state appellate courts. Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006). Thus, we may not re-assess credibility determinations made by the state courts, and we must give equal deference to both the explicit and implicit factual findings made by the state courts. Weeks v. Snyder, 219 F.3d 245, 258 (3d Cir. 2000). Accordingly, in a case such as this, where a state court judgment rests upon factual findings, it is well-settled that:

> A state court decision based on a factual determination, ..., will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state proceeding. Miller–El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 154 L.Ed.2d 931 (2003). We must presume that the state court's determination of factual issues was correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Campbell v. Vaughn, 209 F.3d 280, 285 (3d Cir.2000).

Rico v. Leftridge–Byrd, 340 F.3d 178, 181 (3d Cir. 2003). Applying this standard of review, federal courts may only grant habeas relief whenever "[o]ur reading of the PCRA court records convinces us that the Superior Court made an unreasonable finding of fact." Rolan, 445 F.3d at 681.

### (3) Ineffective Assistance of Counsel Claims

These general principles apply with particular force to habeas petitions that are grounded in claims of ineffective assistance of counsel. It is undisputed that the Sixth Amendment to the United States Constitution guarantees the right of every criminal defendant to effective assistance of counsel. Under federal law, a collateral attack of a sentence based upon a claim of ineffective assistance of counsel must meet a two-part test established by the Supreme Court in order to survive. Specifically, to prevail on a claim of ineffective assistance of counsel, a petitioner must establish that: (1) the performance of counsel fell below an objective standard of reasonableness; and (2) that, but for counsel's errors, the result of the underlying proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 691-92 (1984). A petitioner must satisfy both of the Strickland prongs in order to maintain a claim of ineffective counsel. George v. Sively, 254 F.3d 438, 443 (3d Cir. 2001).

At the outset, Strickland requires a petitioner to "establish first that counsel's performance was deficient." Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001). This threshold showing requires a petitioner to demonstrate that counsel made errors "so serious" that counsel was not functioning as guaranteed under the Sixth Amendment. Id. Additionally, the petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms.

Id. However, in making this assessment "[t]here is a 'strong presumption' that counsel's performance was reasonable." Id. (quoting Berryman v. Morton, 100 F.3d 1089, 1094 (3d Cir. 1996)).

But a mere showing of deficiencies by counsel is not sufficient to secure habeas relief. Under the second Strickland prong, a petitioner also "must demonstrate that he was prejudiced by counsel's errors." Id. This prejudice requirement compels the petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." Id.

Thus, as set forth in Strickland, a petitioner claiming that his criminal defense counsel was constitutionally ineffective must show that his lawyer's "representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Thomas v. Varner, 428 F.3d 491, 499 (3d Cir. 2005) (quoting Strickland, 466 U.S. at 689). The petitioner must then prove prejudice arising from counsel's failings. "Furthermore, in considering whether a petitioner suffered prejudice, '[t]he effect of counsel's inadequate performance must be

evaluated in light of the totality of the evidence at trial: a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" Rolan, 445 F.3d at 682 (quoting Strickland, 466 U.S. at 696) (internal quotations omitted).

Although sometimes couched in different language, the standard for evaluating claims of ineffectiveness under Pennsylvania law is substantively consistent with the standard set forth in Strickland. See Commonwealth v. Pierce, 527 A.2d 973, 976–77 (Pa.1987); see also Werts v. Vaugh, 228 F.3d 178, 203 (3d Cir. 2000) ("[A] state court decision that applied the Pennsylvania [ineffective assistance of counsel] test did not apply a rule of law that contradicted Strickland and thus was not 'contrary to' established Supreme Court precedent"). Accordingly, a federal court reviewing a claim of ineffectiveness of counsel brought in a petition under 28 U.S.C. § 2254 may grant federal habeas relief if the petitioner can show that the state court's adjudication of his claim was an "unreasonable application" of Strickland. Billinger v. Cameron, 2010 WL 2632286, at *4 (W.D. Pa. May 13, 2010). In order to prevail against this standard, a petitioner must show that the state court's decision "cannot reasonably be justified under existing Supreme Court precedent." Hackett v. Price, 381 F.3d 281, 287 (3d Cir. 2004); see also Waddington v. Sarausad, 555 U.S. 179, 190 (2009) (where the state court's application of federal

law is challenged, "the state court's decision must be shown to be not only erroneous,

but objectively unreasonable") (internal citations and quotations omitted).

This additional hurdle is added to the petitioner's substantive burden under

Strickland. As the Supreme Court has observed a "doubly deferential judicial review

that applies to a Strickland claim evaluated under the § 2254(d)(1) standard."

Knowles v. Mirzayance, 556 U.S. 111, 123 (2009); see also Yarborough v. Gentry,

540 U.S. 1, 6 (2003) (noting that the review of ineffectiveness claims is "doubly

deferential when it is conducted through the lens of federal habeas"). This doubly

deferential standard of review applies with particular force to strategic judgment like

those thrust upon counsel in the instant case. In this regard, the Court has held that:

> "The proper measure of attorney performance remains simply
> reasonableness under prevailing professional norms." Id., at 688, 104
> S. Ct. 2052. "Judicial scrutiny of counsel's performance must be highly
> deferential," and "a court must indulge a strong presumption that
> counsel's conduct falls within the wide range of reasonable professional
> assistance." Id., at 689, 104 S. Ct. 2052. "[S]trategic choices made after
> thorough investigation of law and facts relevant to plausible options are
> virtually unchallengeable." Id., at 690, 104 S. Ct. 2052.

Knowles v. Mirzayance, 556 U.S. 111, 124, 129 S. Ct. 1411, 1420, 173 L. Ed. 2d

251 (2009). The deference which is owed to these strategic choices by trial counsel

is great.

> Therefore, in evaluating the first prong of the Strickland test, courts
> "must indulge a strong presumption that counsel's conduct falls within
> the wide range of reasonable professional assistance; that is, the
> defendant must overcome the presumption that, under the
> circumstances, the challenged action 'might be considered sound trial

strategy.' " <u>Id</u>. The presumption can be rebutted by showing "that the conduct was not, in fact, part of a strategy or by showing that the strategy employed was unsound."

<u>Lewis v. Horn</u>, 581 F.3d 92, 113 (3d Cir. 2009) (quoting <u>Thomas v. Varner</u>, 428 F.3d 491, 499-500 (3d Cir. 2005)) (footnote omitted).

### (4) <u>Procedural Benchmarks – Exhaustion and Procedural Default</u>

#### a. <u>Exhaustion of State Remedies</u>

State prisoners seeking relief under section 2254 must also satisfy specific, additional procedural standards. Among these procedural prerequisites is a requirement that the petitioner "has exhausted the remedies available in the courts of the State" before seeking relief in federal court.  28 U.S.C. § 2254(b).  In instances where a state prisoner has failed to exhaust the legal remedies available to him in the state courts, federal courts typically will refuse to entertain a petition for habeas corpus.  <u>Whitney v. Horn</u>, 280 F.3d 240, 250 (3d Cir. 2002).

This statutory exhaustion requirement is rooted in principles of comity and reflects the fundamental idea that the state should be given the initial opportunity to pass upon and correct alleged violations of the petitioner's constitutional rights. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 844 (1999). The Supreme Court has explained that "a rigorously enforced total exhaustion rule" is necessary in our dual system of government to prevent a federal district court from upsetting a state court decision without first providing the state courts the opportunity to correct a constitutional

violation.  Rose v. Lundy, 455 U.S. 509, 518 (1982).  Requiring exhaustion of claims in state court also promotes the important goal of ensuring that a complete factual record is created to aid a federal court in its review of § 2254 petitions.  Walker v. Vaughn, 53 F.3d 609, 614 (3d Cir. 1995).  A petitioner seeking to invoke the writ of habeas corpus, therefore, bears the burden of showing that all of the claims alleged have been "fairly presented" to the state courts, and the claims brought in federal court must be the "substantial equivalent" of those presented to the state courts. Evans v. Court of Common Pleas, 959 F.2d 1227, 1231 (3d Cir. 1992); Santana v. Fenton, 685 F.2d 71, 73-74 (3d Cir. 1982). A petitioner cannot avoid this responsibility merely by suggesting that he is unlikely to succeed in obtaining state relief, since it is well-settled that a claim of "likely futility on the merits does not excuse failure to exhaust a claim in state court."  Parker v. Kelchner, 429 F.3d 58, 63 (3d Cir. 2005).

Although this exhaustion requirement compels petitioners to have previously given the state courts a fair "opportunity to apply controlling legal principles to the facts bearing upon [the petitioner's] constitutional claim," Picard v. Connor, 404 U.S. 270, 276 (1971), this requirement is to be applied in a commonsense fashion. Thus, the exhaustion requirement is met when a petitioner submits the gist of his federal complaint to the state courts for consideration, without the necessity that the petitioner engage in some "talismanic" recitation of specific constitutional clams.

14

<u>Evans</u>, 959 F.2d at 1230-33.  Similarly, a petitioner meets his obligation by fairly presenting a claim to state courts, even if the state courts decline to address that claim.  <u>Dye v. Hofbauer</u>, 546 U.S. 1 (2005) (per curiam); <u>Johnson v. Pinchak</u>, 392 F.3d 551, 556 (3d Cir. 2004).

### b.  <u>Procedural Default</u>

A necessary corollary of this exhaustion requirement is the procedural default doctrine, which applies in habeas corpus cases.  Certain habeas claims, while not exhausted in state court, may also be incapable of exhaustion in the state legal system by the time a petitioner files a federal habeas petition because state procedural rules bar further review of the claim.  In such instances:

> In order for a claim to be exhausted, it must be "fairly presented" to the state courts "by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 844-45, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999). If a claim has not been fairly presented to the state courts and it is still possible for the claim to be raised in the state courts, the claim is unexhausted . . . .

> If a claim has not been fairly presented to the state courts but state law clearly forecloses review, exhaustion is excused, but the doctrine of procedural default may come into play.  A procedural default occurs when a prisoner's federal claim is barred from consideration in the state courts by an "independent and adequate" state procedural rule.  Federal courts may not consider the merits of a procedurally defaulted claim unless the default and actual "prejudice" as a result of the alleged violation of the federal law or unless the applicant demonstrates that failure to consider the claim will result in a fundamental "miscarriage

of justice." Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L.Ed.2d 640 (1991).

Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002).

"[A] federal court will ordinarily not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus '[o]ut of respect for finality, comity, and the orderly administration of justice.' This is a reflection of the rule that 'federal courts will not disturb state court judgments based on adequate and independent state law procedural ground.'" Hubbard v. Pinchak, 378 F.3d 333, 338 (3d Cir. 2004) (citations omitted). Given these concerns of comity, the exceptions to the procedural default rule, while well-recognized, are narrowly defined. Thus, for purposes of excusing a procedural default of a state prisoner seeking federal habeas relief, "[t]he Supreme Court has delineated what constitutes 'cause' for the procedural default: the petitioner must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" Werts v. Vaughn, 228 F.3d 178, 192-93 (3d Cir. 2000) (citations omitted). Similarly, when examining the second component of this "cause and prejudice" exception to the procedural default rule, it is clear that:

> With regard to the prejudice requirement, the habeas petitioner must prove "'not merely that the errors at … trial created the possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" This standard essentially requires the petitioner to show he was denied "fundamental fairness" at trial. In the context of an

> ineffective assistance claim, we have stated that prejudice occurs where "there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different."

Id. at 193 (citations omitted).

Likewise, the "miscarriage of justice" exception to this procedural bar rule is also narrowly tailored, and requires a credible assertion of actual innocence to justify a petitioner's failure to comply with state procedural rules. Hubbard, 378 F.3d at 338.

Procedural bar claims typically arise in one of two factual contexts. First, in many instances, the procedural bar doctrine is asserted because an express state court ruling in prior litigation denying consideration of a habeas petitioner's state claims on some state procedural ground. In such a situation, courts have held that:

> A habeas claim has been procedurally defaulted when "a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." Coleman v. Thompson, 501 U.S. 722, 730, 111 S. Ct. 2546, 115 L.Ed.2d 640 (1991). For a federal habeas claim to be barred by procedural default, however, the state rule must have been announced prior to its application in the petitioner's case and must have been "firmly established and regularly followed." Ford v. Georgia, 498 U.S. 411, 423-24, 111 S. Ct. 850, 112 L.Ed.2d 935 (1991). Whether the rule was firmly established and regularly followed is determined as of the date the default occurred, not the date the state court relied on it, Doctor v. Walters, 96 F.3d 675, 684 (3d Cir. 1996), because a petitioner is entitled to notice of how to present a claim in state court.

Taylor v. Horn, 504 F.3d 416, 427-28 (3d Cir. 2007). (citing Ford, 498 U.S. at 423-24).

In other instances, the procedural default arises, not because of an express state court ruling, but as a consequence of a tactical choice by a habeas petitioner, who elects to waive or forego a claim in the course of his state proceedings, and thus fails to fully exhaust the claim within the time limits prescribed by state statute or procedural rules. In such instances the petitioner's tactical choices in state court litigation also yield procedural defaults and waivers of claims federally. See, e.g., Johnson v. Pinchak, 392 F.3d 551 (3d Cir. 2004) (procedural default where petitioner failed to timely pursue state claim); Hull v. Freeman, 991 F.2d 86 (3d Cir. 1993) (same). Accordingly, a petitioner's strategic choices in state court waiving or abandoning state claims may act as a procedural bar to federal consideration of his claims, unless the petitioner can show either "cause and prejudice" or demonstrate a "fundamental miscarriage of justice."

It is against these legal benchmarks that we assess McCarthy's petition.

**B. This Petition Will Be Denied.**

In this habeas petition, McCarthy raises eight grounds that he believes entitle him to relief. On this score, he alleges that his trial counsel was ineffective for: (1) failing to preserve a Brady claim regarding surveillance tapes, and failing to correct alleged false testimony regarding the tapes; (2) failing to use the petitioner's cell

phone records to impeach a government witness; (3) failing to suppress a photo identification; (4) failing to suppress an in-court identification; (5) introducing evidence of the petitioner's prior bad acts; (6) failing to investigate an issue with a juror who had been excused; (7) failing to call a witness; and (8) failing to object to the use of improper impeachment evidence. However, as we will discuss below, some of McCarthy's claims are unexhausted and procedurally defaulted, as they were withdrawn in the state courts. Moreover, the claims that have been exhausted were thoroughly considered by the state courts and denied on their merits. Accordingly, this petition should be denied.

### (1) <u>Several of McCarthy's Claims are Unexhausted and Procedurally Defaulted.</u>

Federal courts typically require a fully and complete round of appeals before a claim is deemed exhausted. <u>See</u> <u>O'Sullivan</u>, 526 U.S. at 844-45 (1999) (finding that a petitioner properly exhausts claims in state court "by invoking one complete round of the State's established appellate review process"); <u>Lines v. Larkin</u>, 208 F.3d 153, 160 (3d Cir. 2000) ("Petitioners who have not fairly presented their claims to the highest state court have failed to exhaust those claims"); <u>Evans</u>, 959 F.2d at 1230 ("A claim must be presented not only to the trial court but also the state's intermediate court as well as to its supreme court"); <u>Blasi v. Atty. Gen. of Pa.</u>, 30 F.Supp.2d 481, 486 (M.D. Pa. 1998) ("The exhaustion doctrine requires the defendant to present the issue to any intermediate state appellate court, if applicable,

and to the state's supreme court"). However, in light of the Pennsylvania Supreme Court's Order No. 218, which expressly allows petitioners to forego state Supreme Court review of legal claims exhausted in the Superior Court, it has been held that "Order No. 218 renders review from the Pennsylvania Supreme Court 'unavailable' for purposes of exhausting state court remedies under § 2254(c)." Lambert v. Blackwell, 387 F.3d 210, 233 (3d Cir. 2004).

At the outset, we note that three of McCarthy's claims were raised in his counseled PCRA petition but were withdrawn at the PCRA hearing. (Doc. 9-6, at 2). Thus, McCarthy's claims that counsel failed to move to suppress a photo identification and an in-court identification, as well as the claim that counsel failed to call a witness, are wholly unexhausted. Additionally, as to McCarthy's claim that counsel failed to investigate an issue regarding a juror who was excused, the PCRA court found that this claim was undeveloped, and McCarthy failed to raise the claim on appeal to the Superior Court. (Doc. 9-7, at 10; Doc. 9-10, at 2, n. 3).

Accordingly, we find that these claims are wholly unexhausted and procedurally defaulted, as the time for bringing these claims has passed. Moreover, McCarthy has not demonstrated cause to excuse the procedural default of these claims. Accordingly, these claims do not afford McCarthy any relief.

**(2) McCarthy's Remaining Claims are Without Merit.**

McCarthy's remaining claims, while fully exhausted in the state courts, similarly afford him no relief. These claims were considered on their merits in the state courts, which found that McCarthy's counsel was not ineffective, and that McCarthy could not show that he was prejudiced. Given the deference we must afford to these state court findings, we agree and find that these claims do not warrant habeas relief.

McCarthy's first claim is that his counsel was ineffective for failing to preserve a Brady claim with respect to surveillance tapes, and that he did not correct alleged false testimony given about the existence of the tapes. McCarthy asserts that there is surveillance footage that was obtained by the Commonwealth, specifically by Detective Rivera, that showed him at a City Gas and Diesel station at or around the time of the shooting. He claims that these tapes were suppressed by the Commonwealth, and that Detective Rivera falsely testified that he never obtained security footage from City Gas and Diesel, as Rivera's police report apparently attested to obtaining videos from City Gas and Diesel.

The PCRA court addressed this claim and found that the claim lacked merit. (Doc. 9-7, at 7). The court first concluded that McCarthy had failed to prove the actual existence of the video. (Id.) Moreover, the court reasoned that if the video did exist, McCarthy could have obtained his own copy. (Id.) Thus, the court concluded

that McCarthy failed to demonstrate a <u>Brady</u> violation, as he did not show that the Commonwealth was in exclusive possession of the video. (<u>Id.</u>) Further, although trial counsel testified that he believed he had asked for the tapes prior to trial, and even if this constituted deficient performance, the court found that McCarthy suffered no prejudice. (<u>Id.</u>) On this score, the court reasoned that even if the video existed, "such evidence would not compel a different verdict, given the overwhelming nature of evidence supporting Defendant's conviction." (<u>Id.</u>) The court went on to further underscore the evidence against McCarthy, including that,

> The shooting transpired after a period of tension between the men involved. Defendant used a deadly weapon, a gun, to shoot a bullet into Enos's head. Then, immediately thereafter, Defendant made a statement that he hoped someone had been hit by his gunshots. The testimony/evidence at trial clearly supports Defendant's convictions for first-degree murder, criminal conspiracy, carrying a firearm without a license, and REAP.

(<u>Id.</u>, n. 2).

The Superior Court agreed. (Doc. 9-10). While the court noted the inconsistencies between Detective Rivera's testimony and what was contained in his report, the court ultimately concluded that McCarthy suffered no prejudice. (<u>Id.</u>, at 4). The court first concluded that the PCRA court correctly found that McCarthy failed to establish the existence of the video, and thus, could not establish a <u>Brady</u> violation had occurred. (<u>Id.</u>) Moreover, the court found that McCarthy could not show prejudice given the other overwhelming evidence of his guilt, including the

fact that police found the murder weapon near the crime scene in a glove that contained McCarthy's DNA. (Id.)

Here, we cannot conclude that the state courts' determinations were contrary to law or based on an unreasonable determination of the facts. Rather, the record shows that even if this surveillance video existed, there was other evidence in the record of McCarthy's guilt, including the fact that the murder weapon was found in a glove with McCarthy's DNA on it and testimony that McCarthy was the person who shot Enos. Accordingly, this claim does not afford McCarthy habeas relief.

McCarthy's next claim asserts that his counsel was ineffective for failing to impeach the Commonwealth's star witness, Derek Brice, with McCarthy's phone records. Brice testified that McCarthy was not answering his phone after the shooting, but that he did make some outgoing calls and listen to a voicemail from Detective Rivera. McCarthy asserts that counsel should have introduced his phone records, which showed that McCarthy answered several incoming calls, to impeach Brice.

The PCRA court found that this claim was without merit, reasoning that whether or not McCarthy answered phone calls after the shooting was a wholly collateral question to the central issue of the identity of the shooter. (Doc. 9-7, at 8). The court noted that trial counsel impeached Brice on a number of inconsistencies, given that Brice's credibility was a strong element of the case. (Id.) However, trial

counsel testified at the PCRA hearing that if he did not introduce the cell phone records at trial, it was because it could have had other consequences in the trial. (Id.) Counsel's testimony reveals that the decision to forego this line of inquiry entailed a strategic choice by counsel, a risk-reward calculus which is not subject to *post hoc* second guessing. Thus, the PCRA court found that counsel was not ineffective, and again noted the strong evidence against McCarthy.

The Superior Court agreed on appeal. (Doc. 9-10, at 5). On this score, the court found that McCarthy failed to show prejudice from counsel's failure to introduce his phone records. (Id.) The court reasoned that there was overwhelming evidence to "support[] an inference of [McCarthy's] consciousness of guilt, separate and apart from additional confrontation of Brice with [McCarthy's] cellular telephone records," including the fact that McCarthy was apprehended in Florida with Mays, and that the two looked "unkempt" and appeared to have been on the run. (Id.)

Thus, we conclude that the state courts' findings were not contrary to law or based on an unreasonable determination of the facts. Rather, the courts found that counsel had a reasonable basis for not introducing the records, and that in any event, the failure to introduce the records did not prejudice McCarthy given the other evidence of his consciousness of guilt, including fleeing to Florida and the fact that

the murder weapon was found in a glove with his DNA. Accordingly, this claim does not warrant habeas relief.

McCarthy next asserts that counsel was ineffective when he elicited testimony and introduced evidence of an unrelated criminal arraignment sheet at trial. While searching for McCarthy after the shooting, Detective Rivera found a criminal arraignment sheet in McCarthy's apartment, which led Rivera to send officers to the Dauphin County courthouse on the day of that arraignment to look for McCarthy. Trial counsel testified at the PCRA hearing that he used this unrelated arraignment sheet to establish that McCarthy was in Harrisburg and as evidence to rebut the Commonwealth's assertion that McCarthy's flight to Florida established his consciousness of guilt. (Doc. 9-6, at 15-16). McCarthy asserts that the introduction of the unrelated arraignment sheet and testimony from Detective Rivera prejudiced him because he lost his presumption of innocence when the jury heard evidence of unrelated criminal activity.

The PCRA court found that this claim was without merit. First, the court noted that the testimony related to the arraignment sheet was limited, in that it was recovered from McCarthy's apartment and was a criminal proceeding. (Doc. 9-7, at 9). Thus, the PCRA court ultimately concluded that "the claimed error was, at most, a fleeting reference to criminal activity," and that "[t]he line of questioning had

nothing to do with [McCarthy's] criminal history." (<u>Id.</u>) Accordingly, the PCRA court found that counsel did not render ineffective assistance.

On appeal, the Superior Court affirmed. (Doc. 9-10, at 6-7). The court reasoned that the evidence became "part of the chain or sequence of events which became part of the history of the case and formed part of the natural facts under the *res gestae* exception to Rule 404(b)." (<u>Id.</u>) The court noted that the testimony regarding this arraignment sheet was limited, in that Detective Rivera found the arraignment sheet and ordered officers to search for McCarthy at the Dauphin County courthouse. (<u>Id.</u>, at 7). Further, the court found that trial counsel had a reasonable basis for introducing the arraignment to establish McCarthy's presence in Pennsylvania:

> Obviously, trial counsel did not seek to establish Appellant's predisposition to commit crime by eliciting testimony regarding Appellant's presence at the unrelated arraignment. Instead, trial counsel offered the arraignment for to establish Appellant's presence in Harrisburg, Pennsylvania after the shooting, but before his apprehension in Florida, in order to negate the Commonwealth's evidence of flight as consciousness of Appellant's guilt.

(<u>Id.</u>) Thus, the Superior Court concluded that this claim afforded McCarthy no relief.

Once again, we cannot conclude that the state courts' findings were contrary to law or based on an unreasonable determination of the facts. The evidence of McCarthy's flight and the inference of consciousness of guilty that could be drawn from that light, was highly incriminating and called out for some defense response.

Here, trial counsel testified that he offered the evidence for the specific purpose of establishing McCarthy's presence in Pennsylvania before he was apprehended in Florida, with the goal of negating the Commonwealth's evidence of flight to establish McCarthy's consciousness of guilt. Given the deference we must afford to the state courts' findings, we conclude as the state courts have concluded that counsel made a reasonable tactical choice when attempting to rebut this inference of flight and consciousness of guilt. Therefore, counsel's performance on this score was not ineffective, and that this claim does not entitle McCarthy to habeas relief.

McCarthy's final claim is that trial counsel failed to object to the Commonwealth's use of improper impeachment evidence to impeach one of its own witnesses. McCarthy's claim stems from the Commonwealth's impeachment of its own witness, Cameron Howard, with a statement made to police by another witness, Linn Mosley. For his part, Howard testified that there was no response when he told Mays and McCarthy to work their differences out with Enos. On the other hand, Mosley testified, consistent with his earlier statement to police, that in response to Howard's suggestion to work things out, someone in the car responded with, "Fuck that. We'll be back." McCarthy contends that using Mosley's statement to police to impeach Howard was improper impeachment evidence under Pennsylvania Rule of Evidence 613, and counsel was ineffective for failing to object to this evidence.

This claim was similarly addressed by the state courts and denied on its merits. The PCRA court found that because Mosley testified as a witness, and testified consistent with the statement he gave to police that was used to impeach Howard, the testimony was introduced as substantive evidence and was therefore proper impeachment evidence. (Doc. 9-7, at 11). The Superior Court agreed, although it noted that the manner in which the testimony and statement were introduced and used was unconventional, in that Mosley testified *after* Howard testified. (Doc. 9-10, at 8). The court ultimately concluded that Mosley's statement, which was admitted as substantive evidence, was proper impeachment evidence "[b]ecause Mosley's testimony contradicted Howard's version of events." (Id.) Further, the court concluded that McCarthy had not suffered prejudice, as there was other overwhelming evidence against him including Brice's testimony, DNA evidence, and McCarthy's flight after the shooting. (Id.) Thus, whether cast as impeachment or as substantive evidence, ultimately Mosley's statement was properly before the jury.

Here, we cannot conclude that the state courts' determinations were contrary to law or based on an unreasonable determination of the facts. Rather, the state courts explained that Mosley's statement was properly admitted as substantive evidence, as Mosley testified at trial consistent with his prior statement, although he testified *after* Howard was impeached with the statement. In our view McCarthy cannot

obtain habeas corpus relief based upon the somewhat metaphysical argument that the statement was used inappropriately in impeachment before it was properly introduced as substantive evidence at trial. Moreover, the given the other evidence against McCarthy, including his DNA, his flight, and Derek Brice's testimony, the admission of this statement and impeachment of Howard did not prejudice McCarthy. Accordingly, we conclude that counsel was not ineffective, and this claim is without merit.

In sum, we are mindful that the Supreme Court has observed that a "doubly deferential judicial review . . . applies to a Strickland claim evaluated under the § 2254(d)(1) standard." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009); see also Yarborough v. Gentry, 540 U.S. 1, 6 (2003) (noting that the review of ineffectiveness claims is "doubly deferential when it is conducted through the lens of federal habeas"). Given this deferential standard, we cannot conclude that the state courts' decisions relating to these ineffective assistance of counsel claims were an unreasonable application of Strickland or based on an unreasonable determination of the facts. To the contrary, the PCRA court's and Superior Court's analyses of these ineffective assistance of counsel claims are thorough and well-supported by both the law and the facts of the petitioner's case. Accordingly, these claims do not warrant habeas relief and we recommend that McCarthy's petition be denied.

Finally, we have carefully considered whether McCarthy is entitled to a certificate of appealability under 28 U.S.C. § 2253. As the Supreme Court observed "the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484, (2000). Here, we conclude that McCarthy has made no such showing, nor can he in light of the state court findings and clear evidence of his factual guilt, which thoroughly negates any claim of unfair prejudice resulting from the performance of trial counsel. Accordingly, a certificate of appealability will not issue in this case.

## IV. Conclusion

Accordingly, for the foregoing reasons, the petition for a writ of habeas corpus in this case will be DENIED, and that a certificate of appealability will not issue.

An appropriate order follows.

                                        _s/ Martin C. Carlson_
                                        Martin C. Carlson
                                        United States Magistrate Judge

DATED: December 9, 2021